David H. Krieger, Esq.
Nevada Bar No. 9086
KRIEGER LAW GROUP LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com

Miles N. Clark, Esq.
Nevada Bar No. 13848
Shaina R. Plaksin, Esq.
Nevada Bar No. 13935
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: miles.clark@knepperclark.com
Email: shaina.plaksin@knepperclark.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SUSAN BARNETT,<br><br>    Plaintiff,<br>v.<br><br>QUORUM FEDERAL CREDIT UNION,<br><br>    Defendant. | Civil Action No.:  1:21-cv-00005<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1.     This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Bartholomew County, the State of Indiana and because Defendant is subject to personal jurisdiction in Bartholomew County, State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

**PARTIES**

4. Plaintiff Susan Barnett ("Plaintiff") is a natural person residing in Bartholomew County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Quorum Federal Credit Union ("Quorum") is headquartered in Purchase, NY, doing business in the State of Indiana. Quorum is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

**FACTUAL ALLEGATIONS – FCRA VIOLATIONS**

*GENERAL ALLEGATIONS*

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

8. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

9. On March 20, 2019, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiff's case was assigned Case Number 19-01735-JJG (the "Chapter 7" or "Bankruptcy"). BK ECF No. 1.

10. Upon information and belief, Defendant Quorum or its predecessor-in-interest received notice of the Bankruptcy.

11. On June 25, 2019, Plaintiff obtained an Order of Discharge in her Chapter 7 Bankruptcy case. BK ECF No. 12.

12. Furthering the FCRA's goal of accuracy, a consumer may dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a consumer reporting agency ("CRA") must notify the source or furnisher of information, who must in turn conduct an investigation of the disputed item pursuant to Section[1] 1681s-2(b).

13. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the credit reporting agency ("CRA"). 15 U.S.C. § 1681s-2(b)(1)(B).

14. The furnisher must timely report the results of the investigation to the CRA, which in turn must timely notify the disputing consumer regarding the results of the reinvestigation. *See* 15 U.S.C. §§ 1681s-2(b)(1)(C), 1681i(a)(6).

15. If the furnisher's investigation yields results that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

16. Additionally, Defendant's conduct described herein also failed to comply with the Consumer Data Industry Association's ("CDIA's") Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

17. The CDIA publishes the Metro 2 reporting standards to assist furnishers (like Defendant) with their compliance requirements under the FCRA.

18. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other

---

[1] Unless otherwise noted, herein, all references to "Section," are to the sections or subsections of United States Code Chapter 15.

- 4 -

words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. TransUnion, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

19. On information and belief, Defendant herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

20. The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer reaffirms in a Chapter 7 bankruptcy. *See, e.g.*, 2017 CDIA Credit Reporting Resource Guide ("2017 Metro 2"), Frequently Asked Question ("FAQ") 27(a), at page 6-17.  The instruction provided is: "Account information as it applies going forward."  *Id*.

21. Despite the Metro 2 Format's instructions, Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Bankruptcy, as further set forth below.

22. Thus, the incomplete and inaccurate reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

23. The inaccurate reporting provided to Plaintiff as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

## QUORUM FCRA VIOLATIONS

### *Quorum Violates 15 U.S.C. § 1681s-2(b) (Count 1)*

24. Plaintiff obtained her credit disclosures pursuant to Section 1681g from Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively, "Disclosures"), on or about October 15, 2019. Both of these Disclosures included a tradeline for Quorum partial account no. 51844****, date opened May 2014 ("Quorum Account").

25. For the both the Trans Union and Experian Disclosures, Quorum inaccurately listed February 2019 as 30 days late, March 2019 as 60 days late, April 2019 as 90 days late, and May 2019 through August 2019[2] as "charge off." Quorum also inaccurately reported "maximum delinquency of 90 days in 04/2019" on the Trans Union Disclosure. As such, Quorum failed to report to Trans Union or Experian that Plaintiff's Quorum Account was included and discharged in her Chapter 7 Bankruptcy.

26. Pursuant to 15 U.S.C. § 1681i(a)(2), letters dated March 12, 2020, were sent from Plaintiff to Trans Union and Experian (the "CRAs"), disputing the reporting of her Quorum Account tradeline that appeared on both of her Disclosures.

27. Plaintiff sent her dispute to each CRA, in writing, outlining claimed incorrect and inaccurate credit information furnished by Quorum. Specifically, a certified, return receipt letter was sent to each CRA from Plaintiff ("Dispute Letter(s)"), requesting that the inaccurate and incorrect derogatory information be corrected.

---

[2] Plaintiff's Experian Disclosure also showed the payment history for September 2019 as "charge off."

28. Upon information and belief, upon receiving the Dispute Letter, each CRA notified Quorum of the dispute based on the CRAs' mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

29. Upon receipt of the notice from each CRA, Quorum was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681s-2(b).

30. Upon information and belief, TransUnion failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute. However, Plaintiff obtained a new Trans Union Disclosure dated July 10, 2020. Upon information and belief, Trans Union updated Plaintiff's Quorum Account tradeline in accordance with Quorum's investigation. However, instead of Quorum correcting the Quorum Account to show that it had been included and discharged in bankruptcy, it merely added additional "charge off" notations to the payment history for September 2019 through May 2020.

31. The inaccuracy wrongly verified by Quorum was patently incorrect. Plaintiff's Quorum Account was included and discharged in bankruptcy, which meant all personal liability was eliminated upon discharge in June 2019. All negative reporting on a discharged account, such as the "charge off" notations for June 2019 through May 2020, constitutes patently incorrect reporting. Additionally, upon Plaintiff's filing for bankruptcy in March 2019, all subsequent derogatory reporting should have ceased.

32. This failure by Quorum also caused Plaintiff's Trans Union Credit File to include materially misleading omissions, which in context created misperceptions about the inclusion and discharge of Plaintiff's liability on her Quorum Account.

33. Similarly, on May 4, 2020, Plaintiff received a "reinvestigation" report from Experian ("Experian Reinvestigation"). Experian indicated that it had received the Experian Dispute Letter and investigated Plaintiff's dispute.

34. Experian stated on its Reinvestigation as to the Quorum Account: "The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing your dispute." As such, Quorum failed to correct the inaccuracy that Plaintiff disputed, and the Quorum Account tradeline continued to omit that the account had been included and discharged in bankruptcy. Further, the Quorum Account tradeline payment history showed several more months of "charge off" (May 2019 through March 2020) than the original Experian Disclosure had reported (May 2019 through September 2019).

35. The inaccuracy wrongly verified by Quorum was patently incorrect. Plaintiff's Quorum Account was included and discharged in her bankruptcy, which meant all personal liability was eliminated upon discharge in June 2019. All negative reporting on a discharged account, such as the "charge off" notations for June 2019 through March 2020, constitute patently incorrect reporting. Additionally, upon Plaintiff's filing for bankruptcy in March 2019, all subsequent derogatory reporting should have ceased.

36. This failure by Quorum caused Plaintiff's Trans Union Credit File to include materially misleading omissions, which in context created misperceptions about the inclusion and discharge of Plaintiff's liability on her Quorum Account.

37. A reasonable investigation by Quorum at any point following either Dispute Letter would have indicated that Plaintiff's Quorum Account was included and discharged in her bankruptcy.

38. Quorum failed to conduct a reasonable investigations as required by 15 U.S.C. § 1681s-2(b), failed to review all relevant information Plaintiff provided in her Dispute Letters, as required by and in violation of 15 U.S.C. § 1681s-2(b), and wrongly continued reporting inaccurate information in connection with Plaintiff's credit reports.

39. Moreover, Plaintiff has suffered concrete and imminent harm to her creditworthiness. The Trans Union Disclosure demonstrated that at least thirty-four non-Trans Union entities procured Plaintiff's consumer reports during the two-year period preceding the Trans Union Disclosure.[3] Similarly, the Experian Disclosure demonstrated that at least thirty-eight non-Experian entities procured Plaintiff's consumer reports during the two-year period preceding the Experian Disclosure.[4] Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

40. Plaintiff's continued efforts to correct Quorum's erroneous and negative reporting of the reaffirmed debt by communicating Plaintiff's disputes with Trans Union and Experian were fruitless.

41. Quorum's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

---

[3] This does not include a list of entities who appear to be affiliated with Trans Union, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

[4] This does not include a list of entities who appear to be affiliated with Experian, although Plaintiff does not concede that some or all of these entities would also constitute third parties.

42. Also as a result of Quorum's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Defendant's inaccurate reporting, damage to Plaintiff's creditworthiness, and emotional distress. For example, in or about July 2020, Plaintiff applied for credit with Eagle Finance Co., but upon information and belief, Eagle Finance Co. denied her due to Quorum's inaccurate and incomplete reporting lowering her credit score.

43. By inaccurately reporting account information relating to the reaffirmed debt after notice and confirmation of its errors, Quorum failed to take the appropriate measures as required under 15 U.S.C. § 1681s-2(b).

44. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and she is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant on Count 1:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 4, 2021

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
KRIEGER LAW GROUP LLC
2850 W. Horizon Ridge Parkway, Ste. 200
Henderson, Nevada 89052

Miles N. Clark, Esq.
Shaina R. Plaksin, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorneys for Plaintiff